We're going to hear today is Sullivan vs. De Beers. Mr. Bashman. Good morning. Good morning, Your Honors. May it please the Court. My name is Howard Bashman, and I represent Class Member Susan Quinn. With the Court's permission, I would like to reserve four minutes for rebuttal. Fine. This is an antitrust case. The District Court's Class Certification Opinion evaluates the requirement of predominance in the antitrust context, relying on the so-called Boghossian presumption to establish predominance. In 1977, the U.S. Supreme Court held in Illinois-Brick that indirect purchasers do not have standing to bring suit under federal law to recover damages for antitrust violations. As Judge Jordan's opinion for the panel recognized, today approximately 20 states apply Illinois-Brick to prohibit indirect purchasers from pursuing antitrust damages claims under state law. In addition, many of those same states also prohibit indirect purchasers from circumventing Illinois-Brick by instead characterizing their state law antitrust claims as Consumer Protection Act claims or claims for unjust enrichment. Thus, as the law stands today, it is undisputed that consumers who purchase diamonds in a substantial number of states cannot bring a claim for damages under federal law or applicable state law, whether their claim is characterized as an antitrust claim, a Consumer Protection Act claim, or an unjust enrichment claim. It is my client's argument that a federal court cannot use Rule 23b-3 to certify a nationwide indirect purchaser antitrust overcharge class action to include class members whose claims are governed by the laws of states that prohibit any recovery of damages by indirect purchasers. My client is not alone in that view. All three judges on the original panel agreed with it. Indeed, at an earlier stage of this case, even class counsel agreed with it before a settlement occurred in the Sullivan case filed in the District of New Jersey. But after De Beers had defaulted in that action, class counsel sought certification of indirect purchaser claims arising under state law. Because De Beers had already defaulted, the issue of manageability was not relevant to class certification as there would be no trial. Nevertheless, in the Sullivan case, class counsel limited their certification requests for indirect consumer purchasers to only 31 states and for indirect reseller purchasers to only 23 states. After these cases settled, however, the district court certified two separate 50-state indirect purchaser damages classes, one for consumers and one for resellers. In the AmChem decision, the U.S. Supreme Court held that even in a settlement class action, the court must ensure that Rule 23d3's predominance requirement is satisfied. In AmChem itself, the court prohibited certification and settlement of claims not recognized under existing law in the quest for universal peace. And the court expressed that whether a particular settlement was viewed as desirable or fair cannot substitute for actually satisfying Rule 23's requirements, including the requirements of predominance. Here, class counsel asks this court to ignore the requirements in plain language of Rule 23d3, to ignore the rule enabling tax limitations, and to disregard principles of federalism by ignoring state law prohibitions of direct purchaser recovery, all to allow the certification of resulting settlement of state law claims that simply do not exist. The price for achieving so little, namely the certification and settlement of nonexistent claims, is far too high. This court's rulings in Warfarin and Prudential provide no support for affirmance here. In Warfarin, the district court ruled that all class members possessed a claim under the Delaware Consumer Fraud Act. Prudential, meanwhile, was not an antitrust case, and thus did not implicate Illinois BRIC's prohibition on indirect purchaser recovery. Finally, in neither Warfarin nor Prudential, did this court conclude that applicable state and federal law deprived various class members of any ability to seek damages whatsoever. By contrast, in this case, that conclusion cannot be escaped. This court has a well-established tradition of vacating class action settlements that transgress what Rule 23, the Rules Enabling Act, and principles of federalism allow. In accordance with that tradition, and for the reasons that I have outlined, this court should vacate the district court certification of this settlement class and remand for further proceedings. With that, I welcome the questions of the court. Would your, Mr. Bashman, would your view be the same if this were an uncapped settlement, that all purchases, direct and indirect purchases, were getting 100 percent of their claims? Your position would be the same? I have trouble grappling with that question because it assumes that everyone has claims that exist. Well, there certainly is injury. I don't think there's any doubt that even the indirect purchasers have injury. I guess I'm trying to figure out what your client, Ms. Quinn, is looking for. What is her interest in the case? Okay. Let me put it that directly. And I'm not sure whether you're seeking to vindicate her interest or whether you're concerned with something that's more abstract or structural and whether it involves the fairness of the allocation rather than the Rule 23 certification requirements. The way that the outcome that we are seeking benefits my clients is that, first of all, although my client is a resident of the state of Texas, she purchased diamonds in the state of New Mexico, which is an Illinois brick repealer state. And the way that the settlement is currently structured is that all class members, regardless of whether they have claims that arise under the law of states that have or have not applied to Illinois brick, receive the same recovery under the settlement, so that the settlement is diluted as to people who have valid claims under applicable law. And so it is my client's position that by eliminating that dilution that her recovery would be greater. All right. So your answer to my question would be you wouldn't have a problem if everything were untapped and direct and indirect purchasers were able to get 100 percent of their recompense. In terms of my clients being injured by the problem that gives rise to this case, I guess Your Honor is correct. The same Rule 23b-3 issue would exist under that situation. But, you know, as to whether my client would be objecting to it or not is a totally different question. Well, let me turn it a little bit then. It seems to me your problem is more with the allocation of the settlement then, rather than with the Rule 23 certification standards. And if I'm correct on that, why couldn't this be handled perhaps by a remand to the district court to rethink the allocation? And I recognize that Judge Chesler did do that and rejected the approach of Judge Young in Ray Rolaffen in Massachusetts. But perhaps we should ask him to do it again. If what you're asking, Judge Sarek, is whether my client is willing to change the focus of her objection to be one that raises Rule 23b-3 under these circumstances to one that's raising an allocation or fairness objection, we are not willing to do that today or we will do that at some other time. Yeah, I'm not asking you to change your view. I'm asking is the problem more of allocation or is the problem of Rule 23 standards? The problem that we're focusing on in our objection is the Rule 23b-3 issue. And the reason that it affects us is for the reasons I just outlined. But I think that there can be no escape that under these circumstances bringing in people to this class who have no claims has an effect on the recovery of people that do have claims. And the way to deal with that, in our view, is by enforcing Rule 23b-3's limitations to apply only to causes of action that are recognized as existing under applicable law. Where does it end in terms of cause of actions that exist under common law? And what questions does a district court have to ask? For instance, you note that the Texas client purchased the diamonds in New Mexico and you're presuming that New Mexico law applies. Would not a district court have to conduct a choice of law analysis with respect to every class member and determine which state's interests, I don't want to use the word predominate, but in a conflict of laws analysis, would this have to be done for every class member? And would the court not also have to determine whether there's statute of limitations problems, whether certain state laws required notice before a suit is brought? I mean, how do you cabin the inquiry for the district court, especially for settlement purposes? How would this work? No, that's an excellent question. And to begin with, class counsel and my clients agree that it is the law of where the purchase occurred that should govern whether a person does or does not have a claim. So I don't see that as being in dispute right now. Is the district court supposed to just accept that? As I understand it, that was the way that the case was presented to the district judge, so I'm not sure there's even a disagreement there. But let me proceed. If we're going to be ruling on this, we have to decide. We have to give some guidance to the district courts of the circuit of what they're supposed to do. Well, there's no way to escape that whether it's residence or whether it's the place of purchase or whether it's any other standard, that what the district judge did here was certify a nationwide class under the laws of all 50 states. And so there's no way to escape that under the way this case is presented right now, that whether or not all 50 states confer causes of action upon purchasers governed by their laws or not is that issue. But to go on to the rest of your question, which was how does statute of limitations fit in, we're not saying that if somebody's individual claim is barred by the statute of limitations, that that's a reason to deny class certification. In indirect purchaser antitrust cases, the issues presented here today occur frequently. The In Ray OSB case here in the District of Pennsylvania that Judge Diamond decided, numerous cases cited in our brief, the attachment to class councils, class certification requests in the Sullivan case filed in the District of New Jersey, contains a chart that has Xs by the states that recognize antitrust claims without regard to Illinois BRIC and Consumer Protection Act claims without regard to Illinois BRIC. And so the question of what states allow indirect purchasers to pursue these claims is not an issue that courts are unfamiliar with. To the contrary, they deal with it all the time in these cases. But why focus on that? If I can quote a statement from the Supreme Court in Amchin, and the statement is that settlement is relevant to a class certification. So in this case involves a settlement. Right. And in that same case, the Supreme Court said that predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws. So why, instead of focusing on the vagaries of state laws of all the 50 states, don't we focus on the conduct of the defendant or the misconduct of the defendant as alleged in the complaint? Isn't that a simpler approach? And isn't that what Warfarin focused on? Judge Fuentes, Amchin does say that settlement is relevant to a class certification inquiry. And the specific way that Amchin says that it's relevant is that it's relevant to the question of manageability. And that's with regard to predominance, the rest of the predominance inquiry, and the other Rule 23 requirements, that that settlement, even in the situation of settlement, there should be heightened and undiluted attention given to those requirements. Now, to answer your question about the statement in Amchin about predominance being readily met in antitrust cases, if that were meant to overcome the Illinois BRIC prohibition on standing, then there's nothing to prevent federal class actions from being brought in as a settlement class, notwithstanding Illinois BRIC itself. And I think that class counsel is, at least at the rehearing stage, arguing that that's an alternate way for affirmance to occur here, that this court could say we're going to approve a settlement class under federal law, notwithstanding Illinois BRIC, because both sides agree that the case should be settled. And unless this court is willing to do that as to a federal law claim, it should not be willing to disregard the limitations that various states impose under their state laws. Now, with regard to the Wofford decision. You don't disagree that misconduct or the conduct of the defendant is a relevant factor in the class certification process? We agree that if it were not for the existence of Illinois BRIC's prohibition on standing at both the federal and various state levels, that the facts that give rise to this case could support an antitrust claim that would be subject to a settlement agreement. So I agree with you that, notwithstanding Illinois BRIC, this case could be settled. And, in fact, we agree that this case could be settled as to all of the states that recognize the cause of actions that give rise to this case. Those, of course, are factors that are common to all of the litigants, that is to misconduct. What Rule 23 says is that the common issues and common facts have to be viewed with respect to claims. And what claims refers to are things that can be decided in court. Comments or questions. Right. Not claims. In AmChem. Claims or issues, it says questions. I agree that that's correct with regard to B3. But Rule 23 itself is talking about claims. And the AmChem decision says that you need to have claims that are cognizable in court in order to make the issues that Rule 23 gives rise to pertinent. What's wrong, Mr. Batchman? The Bureau says, essentially in this case, we'll pay $297 million to settle all the claims. But we want releases. And we want releases out there from anybody who has a claim or a potential claim. Now, this whole Illinois BRIC question, I think if you look at it from a state-by-state basis, is very much up in the air. Those states today, let's take the number 30, that don't have specific Illinois BRIC repealers, they could pass a repealer tomorrow, which would give the residents who purchased in their states standing. Why shouldn't the bureaus be able to pay to get a release from that potential liability? Isn't that what this case is all about? First, as a matter of statutory law, it's not clear to me that a state can pass an Illinois BRIC repealer that gives rise to liability for acts of the past. Well, let's assume that they could. It's an undecided question, and the bureau says, no one's shown me that they can't, so therefore I want to make sure that that person's given up. I understand your question. And releases for any and all claims, whether they're good or not. Absolutely. And one of the issues that, with all respect, class counsel tries to make more difficult to understand than it should be, is the distinction between what claims can be certified and what claims can be settled. And we, standing here today, I have no problem with someone who is properly in a class action, releasing any and all claims that that person could have, whether all of those claims were subject to certification or not, as long as one claim that they had was subject to certification. But if you have someone from Ohio, where the Supreme Court of Ohio, there's no doubt as to the state of Ohio, I respectfully submit to the court. The Supreme Court of Ohio, which is the final arbiter of Ohio law, has held in the case of Johnson v. Microsoft in 2005, that under Ohio law you cannot avoid Illinois brick and indirect purchasers have no antitrust claim. Furthermore, in that very same case, the court said you cannot try to recharacterize your antitrust claim as a Consumer Protection Act claim, because that's also barred by Illinois brick. And then finally, in that case, the court said that you can't avoid Illinois brick by characterizing your claim as an unjust enrichment claim. So as to people from Ohio and to various other states, it's totally clear that they have no claim under applicable state law. And so the question of whether people can settle non-existent indirect purchaser claims as to Ohio, begins with the inquiry of, is anyone in the class someone who has those claims or not? And you can't be in the class unless you have a claim that can be decided in court. Would a court have to do the same thing with a joinder motion? Shady Grove said that class action, Rule 23, is just a species of joinder. So every time a judge receives a motion for joinder, it seems to me that under your view of the case, the judge would have to assure himself or herself that there is a, quote, valid claim on the merits. That's a question that I have not given a thought to before right now, and so I don't have an answer to that off the top of my head. What about Reed Elsevier versus Muchnick, where the Supreme Court said, look, the fact that certain plaintiffs failed to register their copyright, meaning they didn't have a valid claim, a good claim on the merits, did not prevent settlement of that? The only question in the Reed Elsevier case, as we pointed out in our supplemental reply brief, was the question of whether that was an issue of subject matter jurisdiction or not, not whether that defeated the question of predominance. And so in reading the opinion, the court did not address Rule 23 briefly at all. Subject matter jurisdiction is a tougher hurdle than predominance. All that I'm saying, Judge Shirk, is that the decision stated what the question presented in Reed Elsevier was, and that was not a predominance question. Now, the Second Circuit, to perhaps try to answer that jointed question, in the case of McLaughlin versus American Tobacco in 2008, did say that when a claim cannot succeed as a matter of law, the court should not certify a class action on that claim. What about Matsushita? That's a pretty strong expression from the Supreme Court about settling claims that couldn't have been brought otherwise. Again, I don't see the other side relying on Matsushita in its brief, so that's not a case that I'm readily familiar with standing here today. How do you distinguish the Second Circuit case, Interest Stock Exchange's options trading, which has said that district court could rule on a proposed class settlement even after the court had rejected plaintiff's claims on the merits? The rejection of claims on the merits is not necessarily the same thing as whether somebody has a claim that's recognized under applicable law or not. There are many reasons for rejecting claims. The merits that there are certain people in that are not in Illinois repealer states, for example, Ohio, you think that they have no claims on the merits. Right, but that's different than saying that someone's claims are time-barred, for example, and they don't have claims they could succeed on, but then those could be settled. In the Second Circuit case, the court decides afterwards that there's no claims on the merits, and yet still it's okay to certify the class. Why shouldn't we follow that case? Because that case does not stand for the proposition that people who don't have any claim whatsoever under applicable law. In other words, these people had claims, they just couldn't succeed on the merits, and that to me is different than saying that you have no standing to come into court and assert a claim. If you have no claim on the merits, you have no claim on the merits, whether it be your case or this case. Your Honor, the distinction between not having standing and not being able to succeed on the merits are two different things. That's what we're trying to – that's the distinction I'm trying to draw. Aren't the courts just trying to be practical because there is a settlement here and De Beers wants to pay out and wants to be done with this case, and what you're suggesting seems to present a nightmarish management problem for the district courts. With respect, we don't believe that it's nightmarish. Class counsel themselves came into this very district court with the assertion that 31 states recognize claims for purchasers and 23 states recognize them for resellers. What we're arguing over today is whether claims that are understood not to exist should be certified into a class action and that a defendant requires not only the settlement of claims that do exist, but the settlement of claims that do not exist. Is that worth sacrificing Rule 23B3, the Rules Enabling Act, and the federalism principles that are at stake? Good. Mr. Bashman, thank you very much. I'll have you back under the pedal. Mr. Pence, good morning. Good morning, Your Honors. John Pence on behalf of David Murray. If I could turn to that last question first, the stock option case from the Second Circuit and the Verizon case from this circuit. The reason why the court can recognize or approve a settlement on behalf of class members who have been determined to have no valid claims is because the entire class is united in its lack of a claim. And your question about can a court certify a class for settlement when it's already dismissed the claims of a certain subclass, that's precisely what's happening as we speak in the District of Maine in the In-Ray New Motor Vehicle Canadian Export litigation. There, Judge Hornby denied or granted a motion to dismiss the claims of, you know, several states that do not have Illinois brick repealer statutes. Later, Defendant Toyota decided that it wanted to settle a nationwide class, even though it had already won in district court. And Judge Hornby said, well, I can do that because the plaintiffs still have the right to appeal my decision denying or dismissing those claims, and even though that's a very flimsy reed to hang a settlement on, I'm going to permit it because those class members are receiving no monetary compensation as part of this settlement. So the plan of allocation there addressed the relative strength of the various class members' claims. And my client is raising the allocation argument here. That is how the class is harmed because, Judge Sirica, this is not an uncapped settlement. This is a limited fund, and no class member, no claimant is going to receive 100% of their damages. Contrary to what the plaintiffs say, I believe that the court must reach the merits when ruling on a settlement class certification. The reason is because Rule 23E and Gersh require the court to weigh the merits against the proposed settlement as part of the analysis to approve a settlement. That's post-certification. You're talking about the fairness determination. Right, but in a settlement class, those two analyses occur together. I don't think so. There has to be a certification, and then there's a fairness analysis. Well, in this case, then, the court blended the fairness analysis between two entirely distinct subclasses and was able to then reach a conclusion that the settlement was fair, reasonable, and adequate. The court brought in the irrelevant issue of the enforceability of a judgment, which is not a factor under Gersh. It may be a practical impediment, but it's not part of the formal analysis about fair compensation for the claims presented. But under the Gersh analysis, doesn't the court have to analyze the risks of litigation? I mean, this is part of the reason for approving the settlement. It's one of the many factors. Well, I'd point out in my reply brief that a judgment – remember, we had defaults here, so the Illinois brick repealer states could have proceeded to recover a judgment, and that judgment would have been good for a period of up to 20 years. It's possible that that would have been more valuable than the immediate cash value of a $295 million settlement. Thank you very much. Thank you, Your Honor. Mr. Gaudet? Good morning. Good morning. May it please the Court, my name is Robert Gaudet. I represent Sandeep Gopalan and other members of the consumers subclass. About 117 million consumers stand to gain $1 each. Well, class representatives on their behalf stand to gain $5,000 each, and the class counsels stand to gain $75 million. There was a clear conflict of interest among the parties, and you can see who were the losers. Since I have three minutes, I'll make three points. First, the district court erred in approving the settlement because it refused to consider the class's right to treble damages when it compared the settlement to the best possible recovery under the eighth Gersh factor. This error occurs all the time, but it is rarely preserved for appeal. In fact, the same district court in this case made the same error a few years ago in Linehan v. Sears Roebuck. It violates Gersh v. Jeption's instruction to consider it the best possible recovery, and it also violates the Rules Enabling Act. If this error were corrected, consumers might recover three times as much damages. It can make a difference of billions of dollars. Second, in the system of checks and balances, class members like my clients must have an opportunity to review motions for attorney's fees, class representative incentive fee awards, and class settlement, and file their own objections to those motions. This is the only way to prevent excessive money from being taken out of the class settlement fund. Here, after the March 4, 2008 deadline for objections had already passed, over 1,300 pages were filed in the docket. So was the motion for attorney's fees. So was the motion for incentive fee awards. This timetable violated the due process clause and the federal rules, particularly 23H. According to the Ninth Circuit in the Mercury case, this type of filing happens all the time, even though it's against the federal rules. Third, the district court awarded the consumer subclass representatives $5,000 each. That is 5,000 times, or depending on how you look at it, 313 times more than each consumer will get. It is disproportionate, and it is unlawful, because it misaligns the incentives of the class representatives from the class. Courts have found that incentive awards that are six times or 16 times higher than average awards to class members are excessive. The ratio in this case is 5,000 to 1 or 16 to 1. It is completely out of orbit. This court has a rare opportunity to reverse these errors and fix the system of checks and balances. Are you complaining about the amount of the settlement? Yes, I am. Or the certification of the class? Certification is Mr. Bashman's issue. I think we have some common ground. The court failed to make findings under Rule 23, and it also failed to make adequate findings under Gersh v. Jepsen, and it made completely erroneous findings under Gersh v. Jepsen. If you'd like to extend the argument, I can give you some examples. Wasn't there a fairness determination as to the settlement itself? I'm sorry, Your Honor, I couldn't hear the first part of your question. Did the court address whether the settlement was fair or not for the class? There are two classes, and there are two subclasses within the class of indirect purchasers. The court did not address the fairness of the settlement for 117 million consumers. The court made no estimate of the damages suffered by 117 million consumers, and the only time we got an estimate as to the damages suffered by the indirect purchasers was on April 4th when class counsel filed the declaration of Mr. Pissarkovits. That was one month after the deadline for objections. We did not even know the amount of damages suffered by the indirect purchasers class, and we never received an estimate of damages suffered by the consumers. Was it proper for the district court in the fairness consideration to take into account the lack of personal jurisdiction or at least the fight over personal jurisdiction and the enforcement of judgments, or was that an improper thing to take into account when weighing the value or the fairness of the settlement? Well, Your Honor, that's completely appropriate to take into account, but it should be done properly, and it should be done under the ninth Gersh factor, which is risks attendant to litigation. In this case, the court spread that fact among all the different factors, muddied the analysis, made it difficult for you to review its decision, and it made erroneous findings. It found that personal jurisdiction would have been difficult to establish. The evidence in the record says to the contrary. Personal jurisdiction would have been very easy to establish for a company that sells two-thirds of the diamonds in the world, half of which end up in America. Of course it can foresee being held in court in America. It controls site holders. Many of those site holders who were called vassals by Mr. Persakowitz are in the United States and with offices in the United States. These vassals of De Beers are in New York City. Of course it can be found... Why don't you finish it up? You may. Your Honor raises a good point about personal jurisdiction and enforcement of judgments. The court refused to consider the objections we filed on April 13th, actually April 11th, and they were docketed April 13th, in response to over 1,300 pages supporting the settlement that were filed after the deadline for objections. And we were not able to address this issue, and the court didn't make appropriate findings. Would you please give us a conclusory statement? Okay, Your Honor. A conclusory statement is this is a very rare opportunity for you to fix these problems and correct the system of checks and balances in the class action system, which has become a joke in much of America, and even Europeans are throwing their noses in the American class action system because it pays more than $75 million and gives consumers $1. This is your chance to fix the system. Thank you very much. Thank you, Your Honor. Mr. Zakharoff? Good morning. Good morning. Judge Sirica, may it please the Court, Samuel Zakharoff for the appellees in this case. The gravamen of Mr. Bashman's argument and the argument that persuaded the panel the first time this Court heard this case is that this is a case that divides the world between citizens and states that have Illinois brick repealers and states that do not. And perhaps the best way to start is to walk the Court through, if I may take my time on that, what exactly was before the district court, because this was not just the Sullivan case. This was seven class actions that were being settled in one unitary proceeding. The first class action that was filed in this case, and one that was certified for litigation purposes in 2003 for injunctive relief, was the Leiter case. And so I would like to just tell the Court what the allegations were in Leiter and let me map them onto the kinds of claims that individuals would have. I have prepared a document which I will file by motion afterwards that just puts these relevant documents from the record together. But on page 1983 of the record, we have the declaration of Susan Michelle Quinn, who is the only client that Mr. Bashman has here. That says, I purchased diamond products during the class period. That is all we know about Ms. Quinn. Until today, there was no place in the record where there was any evidence that she purchased her claims or diamond diamonds in New Mexico. That is something that is outside the record, raised for the first time here, and quite interesting because in the earlier brief filed to this Court, Mr. Bashman says of Ms. Quinn, and I quote, Ms. Quinn has an unjust enrichment claim which entitles her to monetary relief. The claim is not that she is from an Illinois brick or peeler state. The claim is that she has an unjust enrichment claim and therefore she has standing. Now, if she has standing for unjust enrichment being from Texas, we would have to do the kind of analysis that Judge Rendell and Judge Fischer described of trying to figure out what every single live claim was in order to figure out how every single class member has or could possibly participate in the recovery here. But I think that Mr. Bashman undersells his client because if we go to the Leiter case, which is the first case on file, filed in 2001, was in trial in 2005 at the time of the settlement. Trial was interrupted, a trial on the injunction.  At page 538 of the joint appendix, the Leiter opinion complaint begins by quoting the statement of the chairman of De Beers. In the United States at Harvard Business School, I am chairman of De Beers, a company that likes to think of itself as the world's longest running monopoly. And he comes to the United States and he thumbs his nose at American law because they had established themselves in South Africa with a series of cutaway corporations that defeated any possible accountability in the United States or so they thought. Leiter picks up on this statement and says, aha, there are causes of action that go to the maintenance of a monopoly in South Africa and the distribution system in the United States. And so if one looks at the Leiter complaint, what one finds is that the very first claim that is addressed in Leiter, which is at page 35 of the opinion, of the handout. I'm sorry, I could not use this more effectively. First claim is as and for a first claim against all defendants for violation of the Wilson Tariff Act. Now the Wilson Tariff Act is a special provision of the antitrust laws, which allows damages for cartelizing a market abroad. No court has ever found that Illinois brick applies to the Wilson Tariff Act until the court so determined in Leiter. And that issue was preserved for appeal by the plaintiffs in Leiter and suspended as a result of the settlement of this case. There are good policy reasons why the Wilson Tariff Act, which involves bringing already cartelized goods into the United States, should not be held to the system of Illinois brick, as this court recognized in Leiter board and in the sugar antitrust case. The policy reasons behind Illinois brick are to consolidate the enforcement provisions of the antitrust laws. What happens when you have a foreign monopoly is that they can create a series of cut-out corporations so that the only direct purchasers are people who are in cahoots with them. And as a result, there is no accountability in our law. Now these are arguments that have not prevailed, but they have not been addressed anywhere either. And we intended to pursue them, which means we have the ability to make a claim on them and perhaps to realize a judgment. Mr. Zakaroff, is the reason you're leading with Leiter because you recognize that under the state law of states like Ohio, there's just no cause of action whatsoever that the people you represent could assert? I don't believe that's correct, Judge Jordan. I lead with Leiter because it's the first case filed. It's the first one in this series of cases, and all the others picked up pieces from it. But I don't believe that that is the case. The Nell case, which was certified for a nationwide class action also, is a case that assumes the application of the laws of all the states on false advertising and material misrepresentations. We have searched and we have found not a single case in which a court says an otherwise actionable misrepresentation or false advertising is absolved from legal liability so long as it's in furtherance of an antitrust conspiracy. How about Johnson? How about the Ohio Supreme Court saying if what you're asserting is a price-fixing case, which is what was asserted, that's what was claimed in your complaint, if what you're asserting is a price-fixing case, you don't have a cause of action. It's not a matter of whether you've got a valid this or whether you could beat the facts on that. You just can't bring a claim whatsoever. You can't bring it under our state Valentine Act, the antitrust statute. You can't bring it under our state Consumer Fraud Act. You can't bring it under common law and just enrichment. You can't bring it. Go away. Does Judge Johnson not say that? Judge Jordan, Johnson does say that, but it doesn't go as far as I think Your Honor indicates. So, for example, Johnson says you can't bring the antitrust pricing claim under the Consumer Protection Laws. I grant that. But when the Honor refers to our complaint, there are seven complaints here, and the complaints allege very different things. They allege, for example, in the Null case, fraudulent misrepresentation and deception. And Johnson does not address whether it is actionable to have this. And, in fact, in the case – Go with the hypothetical then with me. Assume for the sake of discussion that there were a state where the court, the highest court in the state said explicitly, expressly, as ironclad as you would like it to be, for purposes of an antitrust-type claim, we don't care what you call it. We don't care what label you hang on it. Don't bring it here, period. Go away. Assume that happened. You had law just that clear. Would you acknowledge that if that were the case, then a class that purported to give rights to recovery to people in that state would necessarily violate the predominance requirement of Rule 23 because you'd have a class of people for whom there just was no claim whatsoever? Your Honor, I would concede that, but I would have to add two qualifiers. One is that it has to be a state that says no recovery for fraudulent misrepresentation, for fraudulent advertising, or any of the other laws, so long as it's in furtherance of an illegal antitrust conspiracy. I will grant if some state had that law, concession one and concession two, and that were the only claim before the court, you would have a predominance issue. I don't dispute that, but that's not this case. That's why the lighter complaint is so important because you have, first, the Wilson Tariff Act. Second, you have a claim for equitable disgorgement under the federal antitrust laws brought on behalf of every single consumer. That's right in the lighter complaint. Mr. Bashman very cleverly refers to the Keystan case as our soup du jour, our menu du jour item. It is an item of the day, but the day was a decade ago when we filed the lighter complaint, and we said there is a claim for equitable disgorgement on behalf of the consumer. Zachary, if I'm not mistaken, didn't the court in Keystan say, we think that this first, that's the United States in that case as the plaintiff. Nothing turns on that, Your Honor. It's an antitrust disgorgement remedy to the consumers. Doesn't that case itself say we think it might be optimal if you gave the recovery directly to the consumers, but we can't do that because we have these other impediments preventing us from doing it. There was other law that made it inappropriate and, in fact, impossible in the court's view to give the disgorgement to the consumers. That may be, Your Honor, and this is law that is developing and untested. The question ultimately before this court is whether debaters could enter into a settlement when these claims are presented. Now I will grant you this has not been tested on appeal. We don't know the full parameters of the equitable disgorgement claim, but that is something that has to be capable of settlement. I would add one more point, Judge Jordan, which is the next claim in the Leiter complaint is a claim on behalf of all purchasers in the United States, all purchasers under the Donnelly Act, the New York State Illinois brick repealer. The claim in Leiter is that over 95% of diamonds come into the United States and because they transact first in the United States through New York, all of these transactions, wherever the ultimate transaction is, is actionable under New York law. So, Mr. Bashman? So you're saying that because a diamond passes through the state of New York, that gives the state of New York the authority to say to Ohio, look, we really don't care what you people think. This diamond went through our territory, so we're applying our law. The New York State, in its application of the Donnelly Act, has taken the position that if it has antitrust effects in New York, even if the final transaction is not in New York, New York law applies. Now, the New York Court of Appeals has not ruled on that, but the appellate division has. And so, again, the question is not will we ultimately prevail, but what was the answer that Mr. Bashman gave to this court at the panel stage on why Leiter could not apply in this fashion, why New York's Donnelly Act repeal couldn't apply? His answer to the court was this is not an issue, this is not a serious issue. And I'll quote, the court did not certify the New York State antitrust claims because of New York State law. Quote, this opinion by itself clearly demonstrates that a 50 state class is improper. Mr. Bashman's advice to this panel, to the panel of this court, and to De Beers, was never settle the Leiter case on the basis of New York law as applied to the entire class. Why? Because New York law forbids class actions for this kind of claim, and the fact that this is brought in federal court is of no moment. And we know that that's flat wrong, flat wrong, couldn't be more wrong after Shady Grove. May I ask you a question about something that you said just a moment ago? If a member of the class has only an antitrust claim and is from a non-repealer state, that person would not be entitled to recover in this case. Is that accurate? What I was saying was that it could raise predominance issues. Just because somebody comes from a non-repealer state, one of the interesting things in the various opinions in this is that nobody can figure out who are the non-repealer and repealer states. It's in flux all the time. Would it be appropriate for a subclass or a subgroup of class members? If that were the only claim before the court, then there would have to be some equitable accommodation on the allocation side as between the different members. But the facts of this case, again, Your Honor, it's troubling to be here arguing the abstractions when we have a case that has seven different class action complaints here. Do all the class members have the garden variety, generic fraud, misrepresentation type claims? They all have it under the certified null case, and they all have claims that were denied for certification in Leiter but which were pending on appeal from the magistrate in the district court's ruling when this was preserved for appeal when this was settled. What should be our focus in arriving at the predominance decisions? What do we look at? I think the focus is what the Supreme Court said in AmChem and what this court picked up in the prudential opinion, which is is there a genuine controversy between all the class members and the defendant? That's the reason AmChem failed. Warfarin focused on the conduct of the defendant and the allegations of misconduct and fraud. That's correct, Your Honor. You don't agree that that's a failure? I think that's absolutely critical. But I was addressing Judge Jordan's question about whether differences in the plaintiffs could ever defeat predominance, and the answer is, of course, under some in extremis scenario that doesn't correspond to the allegations. In this case, it could. I don't deny that. When the court conducts the predominance inquiry, it is a multifaceted inquiry. It turns on whether there are questions of law or fact that are common and whether this will control the operation of the court's adjudication of the dispute. What is the law and what are the facts that are common in this case? The facts are clear. The facts are you had an international cartel for 100 years that monopolized the diamond trade. You had complete control. By the way, complete control well into the class period. I think if the court pays attention to the reports of Dr. Posarkowitz, Dr. French, and even the trial testimony from the Leiter case, what one finds is that continuing antitrust violations throughout and cartelization throughout the class period. So, for example. Doesn't fact, though you're reciting facts and you say they're clear, but isn't the question we have to deal with not whether there are facts that are in some abstract sense common because they are historical and they exist, but whether there are common questions of fact, that is, whether there are legally relevant questions as to which those facts pertain. I mean if – I accept for purposes of the discussion and the stage of the case that what you said is completely true. But if it's the case that those facts give rise to legal liability for one person, but under the operative law of one of the states whose law you've invoked, there is no right to recovery, is there a question of fact in any legally significant sense that's in common amongst all the members of the class? Judge Jordan, you keep pushing me back to a hypothetical that assumes a one-claim case, which is we seek to recover for violations of the antitrust laws on grounds covered by Illinois BRIC. There are states that have Illinois BRIC repealers and states that do not. Under that circumstance, yes, there is a division. And, yes, there may be a division of such magnitude as to defeat the predominance. That's not this case. So your case comes down to Leiter, to the Wilson Tariff Act, and to an assertion that New York law should apply generally. Wilson Tariff Act, equitable disgorgement as per key span. Donnelly Act claims, common to all class members as alleged in Leiter, rejected by the Leiter court as a basis for a damages class certification on grounds that are now squarely wrong under shady growth. The Null case, which has the claims for false advertising and for material misrepresentation under the consumer laws of all the states, and the various other claims because there's a whole constellation of complaints that raise unjust enrichment claims across all the states. There are at least a half dozen operative claims that cover every single claimant in this case. And the question, Your Honor, I think has to go back to what is the standard. The questions that the court submitted to the parties started to introduce the idea of the valid claim. This is a term that, as best I can tell, first appears in this court's jurisprudence in a footnote in Judge Rendell's concurring opinion in the panel decision in this case. That has never been the standard that this court has applied. This court in Prudential was careful to go back to the Amchem formulation of genuine controversy. In the Pet Foods opinion, this court used the concept of a present claim. A present claim, that means a live, asserted claim. And I think that if one reads the totality of the record, all the cases that are before this court, there's no question that every single member of this class, of all the classes, the seven classes, have genuine controversies, have present claims, have live claims against the beers. Let's assume you're right, and you've got, you say, a half dozen claims that may exist for all class members. But the Fifth Circuit in the Sturman case, 2002, said that variations in state law can nonetheless swamp those common issues. Why couldn't that happen here? It could happen here if the question were the manageability of the case for trial. I am not aware of a court that has held in the settlement context, post-Amchem, that variations in state law are so significant that you cannot hold the class together when class members make common claims, particularly, Judge Ambrose, when the gravamen of the first case that was filed was federal law, was two damages claims directly under federal law. Not to mention the claim that has been made in several of the cases and preserved, and we addressed it in our brief, that there may be a different standard for Section 2 as opposed to Section 1, that under Section 2 monopolization claims, you may have a different application of Illinois brick-type principles. Your answer surprises me, or what you just said in response to Judge Ambrose, that settlement is different. That, to me, seems to be very important. And in your analysis of if this were only Illinois brick, then maybe there's a problem, that seems inconsistent with the idea that Illinois brick really was a manageability case. It had prudential concerns. It wasn't really a settlement case. And in a settlement situation, could De Beers not, by global peace, even if the only claims were Illinois brick-type claims, where what they wanted was to prevent someone from walking in, even if they were from an Illinois brick state, and saying, I'm an indirect purchaser and I want to sue. Doesn't settlement make a huge difference, even if this were only Illinois brick? I think it does. I think that this Court's recent decisions in Verizon and in Pet Foods indicate that settlement is an important policy. I fully agree with Your Honor, and I hope I did not speak to the contrary earlier, that Illinois brick is indeed a prudential decision. It is indeed a way of allocating the enforcement provisions of the antitrust laws, and this Court recognized that in Liner Board and in the sugar antitrust case. Otherwise, we're saying there is a 12B6 inquiry in Rule 23. I think we would be saying even more than that, Your Honor. I think it would require going beyond 12B6 and introducing the idea of what Your Honor addressed before, which was individual by individual determinations. What the Court is being invited to do here is to substitute a requirement for anything that's found in Rule 23, which is comparative and which is highly deferential to the discretion of the trial court. What the Court is being asked to do is to find basically a requirement of trial for each individual's claims, in order to determine the relative weight of them and in order to determine the relative strength of them. Judge? Does it take a trial, Mr. Zakharoff, to look at the law of Ohio? No, Judge Jordan. I think you just retreated pretty rapidly from a concession you made right at the start, which was if this were about the laws of the 50 states and there were a state that said plainly, you can't bring a claim for injury under these facts, no matter what you call it, that that would defeat predominance. I understood you to say that. Now, maybe you're unsaying it, and if you're unsaying it, say that again. I am not unsaying anything, Your Honor. I think that what I am saying is that even in Ohio, Your Honor's rendition of the Ohio law is not correct. Okay. I understand you disagree. I understand you disagree. No, no, no. I don't disagree on your reading of Johnson. But if you look at In Re Abbott Labs from the Northern District of California in 2007, when they were dealing with indirect purchasers who might have claims under the state laws for conduct that was in addition to or consistent with an antitrust monopoly claim, what they found was that the states do not preclude indirect purchasers from asserting claims for unjust enrichment, and among the states that they listed in there was Ohio. Now, maybe that court got it wrong. A single case where there's a decision by a court where there's no Illinois brick repealer where they've said, go ahead and you can recover for unjust enrichment or you can recover for consumer fraud. The Supreme Court of New Jersey in the Wilson case, and New Jersey is not a repealer state, in the Wilson case the Supreme Court of New Jersey says, however, we leave for another day whether a consumer fraud action would be precluded when the allegations of a violation of the Antitrust Act include. If I may finish, include communications with or statements to New Jersey consumers that are clear violations of the CFA. They preserve that. The Segura case in Texas, another non-repeal state, has identical language. Your Honor, it is true I don't have a case on point, but Your Honor has no cases on point, and there are none cited by Mr. Bashman that establish that you can commit consumer fraud as long as it is in furtherance of an antitrust conspiracy. I don't know of such a case. I guess that depends on how one reads Johnson. But you started earlier by saying, look, we've got a federal cause of action, leaders of federal cause of action under the Wilson Fairfax Act. Aren't we arguing about class certification for a class under the laws of the 50 states? I mean, if what Judge Tesler had certified was a nationwide class based on federal law, we wouldn't be having an argument about the laws of the 50 states. But, Your Honor, I believe he did. If one looks at the district court's opinion, the first three pages are a careful recitation of all the underlying claims in all of the cases that are up before the court. And when he recites those cases, including the Leiter case, he recites not just the state law claims but the federal law claims. And then he makes a finding that, in addition, he is persuaded that there are live claims under the laws of all the 50 states. But that is not the exclusive basis for his certification. And let's keep in mind that what Judge Tesler had before him from the Leiter case was a case that was already certified on a nationwide basis under federal law for injunctive purposes and that there were pending appeals on the question whether the New York Donnelly Act should apply to everybody and whether the federal damages claims, either the equitable one or the Wilson Fairfax Act one, should allow recovery there. Under that circumstance, I would submit to the court that if there were no case that mentioned state law, that that would be sufficient. But, of course, we have to deal with the certification as it stands, right? But the certification was of multiple cases on multiple bases, and the question here is largely an allocation question between, you know, whether this was ultimately more about the cases from the indirect purchaser than the purchaser. Judge Tesler was not persuaded that this was a fundamental difference given the overlap of claims that everybody had. And he points, for example, in specific to the Null case, which is a nationwide consumer case that's there before him. Under these circumstances, what he had to do was figure out what was the appropriate division. And, in fact, the hardest division turned out to be between the resellers and the direct consumers, the ultimate consumers. Would you agree that Judge Tesler did not engage in a predominant analysis? I would not, Your Honor. I read that in your opinion, but I think that if one looks at the opinion, he does exactly what this court said to do in Warfarin, which is you start with the common questions under 23A2, and then you put them together into a predominance inquiry. And when he went through the predominance inquiry, he found that the constellation of federal claims and state law claims clearly predominate over individual issues. That is the language of 23B3. Does it predominate over individual issues? But in doing so, doesn't the court need to analyze more so the differences in state law claims? I think that what the court did was it looked at the proffered objections on state law claims and found that as a result of the Null case and the certification there, there were live claims before him on behalf of the consumers of every single case, of every single state. Further, in reciting the claims from the lighter case, he picks up the various claims for damages under federal and New York law that are common to all class members. He has one statement where he says, and I find that the differences between the state laws are not significant, and he further finds as a prudential matter, as a matter of his case administration, that it would exhaust the funds even of this very large settlement to figure out where the claimants have their claims. Because today we learned for the first time that Ms. Wilson is now in New Mexico. This is a revelation. We would have to do this under their standard. A district court would have to do this with every single claimant in every single case as long as there is a state law claim asserted. That can't be right. Why do you say that? I'm puzzled by that. You say you'd have to do this for every single claimant in every single case that ever came up. The case that's presented here is not one that requires asking every class member in every single case what the choice of law is. The class that was certified purported to apply Ohio law, for example. Ohio law says if you accept the reading of Johnson that Mr. Bashman puts forward, you don't have a claim. And, Jordan, to whom does... Without any inquiry about... No, absolutely not, Your Honor. Absolutely not. With all respect, absolutely not. We don't know whether Johnson applies to a single person, even under your reading of Johnson, because we would have to figure out where they bought the diamond, whether in the chain of distribution some other state's laws were applicable. We learned today, today, that this is a New Mexico claim. Well, don't we have to do more inquiry on every single person in Ohio? It may be that the entire Ohio diamond market is people who buy through resales of various states, of various transactions that occur elsewhere. I guess it may be, but wouldn't it be pretty easy to establish a class that said, if your claim arises under Ohio law, you don't have a claim, without asking that question at all? I would make two points, and I realize my time is up. First of all, we don't need to make that because every single person in Ohio has a claim under the Wilson Tariff Act, has a claim under the Equitable Discourses in Federal Law, has a claim in Leiter under the Donnelly Act. Second, even if we were to go down this path, the figuring out the transactional chain to figure out which law applies to each sale is a matter that would require an extraordinary choice of law analysis because we would have to figure out whether states are interest states, whether states are final transaction states, and then we would have to do a choice of law, factual determination for every single class member. If you go down that road, Judge Jordan, what you are doing is making it easier to try these cases and settle them because nobody would ever do that at trial. I don't feel like you're responding to the question I'm putting to you. If it's facially clear on the law, not on the facts, but it's facially clear on the law, that persons whose only claim could arise under Ohio law have no claim, then what factual inquiry is there? In the certification of the class, what factual inquiry is there? All you have to say is, well, if the claim you're asserting is one under Ohio law, you don't have a part in this. Why is it more difficult about it? Your Honor, under the narrow scenario you just gave me, I agree with you, but that is not this case. And what's more, you have forced me to stipulate that it would be a relatively easy factual matter to determine under whose law this arises so we would know whether it's Ohio. I will submit to you, Your Honor, that this is not the case here. We have no idea. As we learned today, shockingly, that Ms. Quinn has resurrected herself as a New Mexico resident in order now to claim an Illinois brick argument for her controlling law, which appears nowhere in the five-year history of the objections in this case. That inquiry will doom every class action settlement, and I think that if the court goes back and I have one minute, Your Honor, if the court goes back to the standard from prudential, which is whether the district court within its sound discretion supported by the record and amply demonstrated in its opinion has resolved the appropriateness of the certification, that what one finds is that pursuant to Wachtell, the district court identified all the claims, all the sources of law that were applicable here. It identified how it was going to manage the distribution so it was fair, adequate, and reasonable to the class as 23E requires. And I think this has to be within the discretion of the trial court because the objections that are put forward are basically to a case that was not before the court as the court recognized in the first pages of its opinion. Thank you, Your Honor. Thank you, Mr. Zagra. Mr. Bashman. Your Honor, in the Georgine case from 1996, Chief Judge Becker's opinion for this court stated, we must apply an individualized choice of law analysis to each plaintiff's claims. And that, of course, is the case that the U.S. Supreme Court affirmed in Amkin, and in support of that proposition, he cited Phyllis Petroleum against Schutz. So the idea in a settlement class that an individualized choice of law inquiry has to be made as to each plaintiff's claims is already the law of this court. Could you address something that really hangs over this case that we haven't talked about, or at least not directly, federalism and the Rules Enabling Act? How can a settlement present either federalism or Rules Enabling Act concerns when a defendant could easily choose to settle a lousy claim in state court, even if the defendant believes that it could win? I think that the difference, Your Honor, is that the court is embroiled in a class action settlement to a much different degree than in a settlement of a non-class action. And so that's the answer to the question. And both Ortiz and Amkin recognized that the Rules Enabling Act does apply to settlements. And the idea that class counsel has about settlements as being a private agreement is, for lack of a better word, hogwash, because if someone comes in who's bound by a class action and tries to sue in a different court, that this court well knows because it happened in Prudential, it happened in other cases. But De Beers is not here making... That person is bound. De Beers is settling. They're willing to go along with it. It's almost like it becomes a contract. Well, this is more than a contract, as I've just said, because the court is involved in approving it, and these people are giving up their nonexistent claims in exchange for not being able to go into court somewhere else. Isn't the focus on the absent class members whose rights may be improperly compromised? When we talk about the fiduciary duty of the judge in the class action approval, isn't that the focus? Well, first, of course, the class action has to be properly certified. If I could just respond to that question about claims and defenses and how that comes in. Judge Turekka, your opinion in Prudential, relying upon the U.S. Supreme Court's opinion in Amchem, stated that, quote, the claims and defenses relevant to the predominance test, I'm going to leave out some unnecessary language in the middle there, refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending lawsuit. And we submit that where the claims do not exist under state law and you're certifying state law claims, that those are not the types of claims and defenses being spoken about. But there were several claims in Prudential, and they all rose out of the same nucleus of common fact. Right, and for the reason we discussed, that was not an Illinois BRIC case. Now, in Wachtell and Constar, it turns out your opinion in Constar, and Judge Smith, your opinion in Wachtell, this court established the requirement that a district court has to identify with precision what claims are being certified for purposes of class certification. And that did not occur here. Judge Chesler's opinion discusses antitrust claims in the predominance section of that opinion. And that's the only types of claims that are being discussed for purposes of predominance. Well, respond to Mr. Zakaroff's point that, look, under Leiter, we had a Wilson-Tarifac claim here. It's a valid one. We may have gotten ruled against, but we have our appellate rights. And just like in the Inter-Indian Motor Vehicles case up in Maine, where Judge Hornby certified it, we're entitled to get a certification on that basis alone. What's wrong with that argument? There are several things wrong with that argument. First of all, that was not the claim that was certified by the district court, and we see no basis for this court to affirm on an alternate basis. The district court has to decide whether a class can be certified based on certain claims or not. And this court can't come in after the fact and say, well, we could certify it on different causes of action that the district court did not even examine in the certification or predominance context, because it is a very factually intensive inquiry in various ways. But even more importantly, the argument that we could come in and say that there's some change in the law that could occur in the future that would actually give us a claim is not the basis on which the court has to consider the predominance inquiry. Rather, the predominance inquiry is based on the law as it exists at the time the court considers the case. Is it your view that the district court did, in fact, engage the predominance inquiry and simply got it wrong, or that he did not? There was a discussion of predominance in connection with the antitrust, the state law antitrust claims in the opinion. But for the reasons we've offered the court, those claims do not exist in approximately 21 states and therefore cannot be certified under Rule 23b-3. We agree with Judge Rendell that the district judge's predominance inquiry leaves a lot to be desired. And I think that Judge Jordan's opinion for the panel sent the case back with the thought that perhaps a different class could be certified. So this is not an all or nothing exercise, nor did the panel say that this case could never be certified based on the facts. Thank you, Your Honor. Mr. Bashman, thank you very much. We had a spirited argument this morning. The argument was superb from all sides. We thank counsel very much. We thank you for superb briefs as well. The court would like to have a transcript prepared of the oral argument and ask the parties to share in the costs of that. And if you would kindly check with the clerk's office, they will tell you how to do that. The court will take this matter under advisement and we will be in short recess.